Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111
Facsimile:  (310) 474-8585

[Additional counsel appear on signature page]

*Counsel for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIA CIMA, individually and on behalf of all others similarly situated,<br><br>                      Plaintiff,<br>    v.<br><br>APPLE INC.,<br><br>                      Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Julia Cima ("Plaintiff"), on behalf of herself and all others similarly situated, brings this class action suit for damages and equitable relief against Defendant Apple Inc. ("Defendant" or "Apple") and alleges the following based upon personal information and investigation, the investigation of her counsel, and on information and belief:

## I.    NATURE OF THE ACTION

1.    This case relates to a flagrant violation of consumer privacy. Quite simply, Apple records consumers' personal information and activity on its consumer mobile devices and applications ("apps"), even after consumers explicitly indicate through Apple's mobile device settings that they do not want their data and information shared. This activity amounts to an enormous wealth of data that Apple collects and uses for its financial gain.

2.    Consumers care about keeping their data private and are demanding more control over their data. Consumers are also becoming increasingly concerned that their private information is being used without their knowledge or permission.

3.    As privacy concerns have grown, Apple has sought to position itself as a leader by touting how its mobile devices allow users to control the information they share. For example, the "Apple Privacy Policy" states:

> At Apple, we respect your ability to know, access, correct, transfer, **restrict the processing of**, and delete your personal data.[1]

(emphasis added).

4.    The Apple App Store "User Privacy and Data Use" page similarly declares:

> *The App Store is designed to be a safe and trusted place for users to discover apps created by talented developers around the world. Apps on the App Store are held to **a high standard for privacy**, security, and content because **nothing is more important than maintaining users' trust**.[2]*

(emphasis added).

5.    Apple even provides specific instructions to users to explain how to control what data

---

[1]    https://www.apple.com/legal/privacy/pdfs/apple-privacy-policy-en-ww.pdf (last updated December 22, 2022)

[2]    https://developer.apple.com/app-store/user-privacy-and-data-use/

Apple collects. Apple tells users to turn off "Allow Apps to Request to Track" if settings if they so wish.

6.    In addition, Apple makes an outright promise in its mobile devices' settings: Apple states that it will "disable [the sharing of] Device Analytics altogether" if a consumer toggles or turns off "Share iPad Analytics" on an iPad, or similar settings on other Apple mobile devices, like the iPhone.[3]

7.    Yet, Apple does not honor users' requests to restrict data sharing.

8.    A recent test performed by two independent app developers at the software company Mysk revealed that even when consumers actively change their "privacy settings" and take Apple's instructions to protect their privacy, Apple still records, tracks, collects, and monetizes consumers' analytics data, including browsing history and activity information. These experts and their testing further showed that Apple continues to access consumers' app usage, app browsing communications, and personal information in its proprietary apps, including the App Store, Apple Music, Apple TV, Books, and Stocks, even when consumers have affirmatively turned off "Allow Apps to Request to Track" and/or "Share [Device] Analytics" on their privacy controls.

9.    *Gizmodo* broke the story on the issue on November 8, 2022.[4] The issue has been reported in multiple news outlets since Gizmodo's report, including The Verge, Engadget, and Fox News.[5] As of the date of this filing, Apple still has not responded to or publicly refuted the reports.

---

[3]    If a consumer has an Apple Watch paired to their iPhone, they must instead turn off the setting for "Share iPhone and Watch analytics" for the same effect. Hereinafter, this setting, across devices, will be referred to as "Share [Device] Analytics."

[4]    Thomas Germain, *Apple Is Tracking You Even When Its Own Privacy Settings Say It's Not, New Research Says*, Gizmodo (Nov. 8, 2022), https://gizmodo.com/apple-iphone-analytics-tracking-even-when-off-app-store-1849757558.

[5]    Mitchell Clark, *iOS developers say Apple's App Store analytics aren't anonymous*, The Verge (Nov. 21, 2022), https://www.theverge.com/2022/11/21/23471827/apple-app-store-data-collection-analytics-personal-info-privacy; Jon Fingas, *Researchers say iPhone usage data isn't as anonymous as Apple claims*, Endgadget (Nov. 21, 2022), https://www.engadget.com/apple-phone-usage-data-not-anonymous-researchers-185334975.html; Julia Musto, *Apple iPhone data not as anonymous as company says: researchers*, Fox News (Nov. 22, 2022), https://www.foxnews.com/tech/apple-iphone-data-not-as-anonymous-company-says-researchers.

10.     Apple's practices deceive consumers. California law prohibits unauthorized recording of confidential communications. Plaintiff brings state law claims on behalf of other similarly situated iPhone and iPad users in the United States (the "Class") arising from Apple's knowing and unauthorized recording, copying, taking, use, and tracking of consumers' communications and activity, and its knowing and unauthorized invasion of consumer privacy.

11.     Plaintiff is an individual whose mobile app usage was tracked by Apple after she had affirmatively elected to turn off the "Allow Apps to Request to Track" and/or "Share [Device] Analytics" options.

12.     Apple, through its tracking and hoarding of data, collected and monetized consumer information without Plaintiff's and similarly situated consumers' consent.

13.     Plaintiff seeks damages and equitable relief on behalf of herself and all other similarly situated Apple device users (the "Class"), arising from Apple's knowing and unauthorized copying, taking, use, and tracking of consumers' communications and activity, and its knowing and unauthorized invasion of consumer privacy.

**II.     THE PARTIES**

Plaintiff

14.     Plaintiff Julia Cima is a resident of San Francisco, California.

15.     Plaintiff owns an iPhone 13. Previously, Plaintiff owned iPhone SE 2020. Plaintiff regularly accesses Apple apps including the App Store, Maps, and Weather. After purchasing her iPhone 13, during the device setup, Plaintiff turned off the "Allow Apps to Request to Track" and "Share iPhone Analytics" options.

16.     Upon information and belief, Apple nevertheless accessed her data on her iPhone 13 device while these features were turned off. An example of a screenshot of Plaintiff's iPhone 13 with data sharing features turned off is below.

- 3 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



21

22      Defendant

23      17.      Defendant Apple Inc. is incorporated in California and maintains its principal place of

24      business at One Apple Park Way, Cupertino, CA 95014.

25   **III.   JURISDICTION AND VENUE**

26      18.      Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act ("CAFA"),

27      28 U.S.C. § 1332(d)(2) because this is a class action in which at least one member of the class is a

28

1    citizen of a state different from any Defendant, the amount in controversy exceeds $5 million,

2    exclusive of interest and costs, and the proposed class contains more than 100 members.

3        19.    This Court has personal jurisdiction over the Defendant because Defendant maintains

4    its principal place of business in this District and because a substantial part of the events or omissions

5    giving rise to the claims asserted herein occurred in this District. Upon information and belief,

6    Defendant designed and developed the devices at issue in this litigation at their headquarters in this

7    District and made decisions concerning the issues that are the subject of this litigation from their

8    headquarters.

9        20.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part

10   of the events or omissions giving rise to the claims asserted herein occurred in this District and because

11   Defendant maintains its principal place of business in this District.

12       21.    This Court has supplemental jurisdiction over the state law claims, pursuant to

13   28 U.S.C. § 1367.

14   **IV.    FACTUAL ALLEGATIONS**

15       **A.    Consumers have a reasonable expectation of privacy on their mobile devices.**

16       22.    More than 1 billion consumers currently use iPhones, and over 1.9 billion iPhones have

17   been sold. Apple's iPhones make up over 23% of the global market share for smart phones. iPads make

18   up an even larger share of their market. In the third quarter of 2022, Apple sold 142 million iPads,

19   totaling 38% of the tablet market.

20       23.    Mobile device users reasonably expect their activity will not be shared without

21   affirmative consent.

22       24.    Tellingly, when Apple announced its operating system update in 2021 (i.e., iOS and

23   iPadOS 15.2), it introduced App Tracking Transparency, purportedly requiring all app developers to

24   ask users for affirmative consent before tracking their activity through third-party apps and websites.[6]

25

26   [6]    Jason Aten, *Apple's iOS 15.2 Is a Major Privacy Update That Lets You See How Apps Are
       Tracking You. It's Very Bad News for Facebook*, Inc. (Dec. 14, 2021), https://www.inc.com/jason-

27   aten/apples-ios-152-is-a-major-privacy-update-that-lets-you-see-how-apps-are-tracking-you-its-very-
       bad-news-for-facebook.html;        *see    also*        https://support.apple.com/en-us/HT212958;

28   https://support.apple.com/en-us/HT212025.

1  In the United States, 94% of users said no.[7] "[W]hen given the choice, people would rather not be

2  tracked."[8]

3       25.    Apple has attempted to differentiate itself from its competitors by playing up its

4  commitment to privacy.

5       26.    For instance, in an April 2021 white paper describing its privacy practices for iPads and

6  iPhones, including its App Tracking Transparency framework, Apple stated that it 'believes that

7  privacy is a fundamental human right" and listed its privacy principles, including "Making sure that

8  users know what data is shared and how it issued, and that they can exercise control over it":[9]

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Apple's privacy principles**

Apple believes that privacy is a fundamental human right. We design our products and services guided by our four key privacy principles:



**Data Minimization**
Collecting only the minimum amount of data required to deliver what you need for a given service.



**On-Device Processing**
Processing data on the device, wherever possible, rather than sending it to Apple servers, to protect user privacy and minimize data collection.



**User Transparency and Control**
Making sure that users know what data is shared and how it is used, and that they can exercise control over it.



**Security**
Hardware and software working together to keep data secure.

---

26   [7]    Rachel Kraus, *After update, only 4 percent of iOS users in U.S. let apps track them*, Mashable

27  (May 7, 2021), https://mashable.com/article/ios-14-5-users-opt-out-of-ad-tracking.

    [8]    *Id.*

28   [9]    https://www.apple.com/privacy/docs/A_Day_in_the_Life_of_Your_Data.pdf.

CLASS ACTION COMPLAINT

27. Recently Apple launched a world-wide ad campaign, erecting 40-foot billboards featuring the iPhone and a simple slogan, "Privacy. That's iPhone."[10]



28. Other billboards are similarly plastered with Apple's purported commitment to privacy. "What happens on your iPhone, stays on your iPhone," announced one billboard in Las Vegas.[11] "Your iPhone knows a lot about you. But we don't," announced another in New York.[12]

---

[10]   *Apple and Privacy*, Apple Insider, https://appleinsider.com/inside/apple-and-privacy.
[11]   Hamza Shaban, *Apple stars at giant tech confab CES — without actually being there*, Washington Post (Jan. 7, 2019), https://www.washingtonpost.com/technology/2019/01/07/apple-burns-google-giant-billboard-touting-privacy-ces.
[12]   https://www.alamy.com/a-billboard-on-the-side-of-a-building-in-midtown-manhattan-on-tuesday-july-9-2019-informs-viewers-of-the-privacy-afforded-by-using-apple-devices-richard-b-levine-image260045682.html (last accessed on Jan. 25, 2023).



29.     In one Apple video advertisement in the same privacy campaign, a consumer stumbles upon a "data auction" as the auctioneer pretends to offer up the various data that apps have collected about the consumer. "Her location data," the auctioneer says as a map is placed on the block and offered to the audience. "It's not data, it's commerce! Do I hear 600? 620?" At the end, text on the screen says, "It's your data. iPhone helps keep it that way."[13]

30.     In another Apple advertisement, the narrator says, "Your information is for sale. You have become the product." After introducing Apple's privacy options, the narrator says, "Whatever you choose is up to you… App Tracking Transparency. A simple new feature that puts your data back in your control."[14]

---

[13]     *Privacy on iPhone | Data Auction | Apple*, Youtube, uploaded by Apple, https://youtu.be/NOXK4EVFmJY.
[14]     *Privacy | App Tracking Transparency | Apple*, Youtube, uploaded by Apple, https://youtu.be/Ihw_Al4RNno.

CLASS ACTION COMPLAINT

31.     More broadly, consumers are worried about their privacy online. According to Cisco, 86% of consumers say they care about data privacy and want more control over their data.[15] Nearly half of those surveyed said they felt unable to protect their personal data—mainly because companies are not transparent about how they use consumer data.[16] A study by Pew Research Center showed that 79% of Americans are concerned about the way their data is being used by companies.[17]

32.     Industry observers have introduced the concept of "surveillance capitalism," speaking to "consumers' increasing awareness that their data is bought, sold, and used without their consent— and their growing reluctance to put up with it."[18]

33.     In sum, while consumer data becomes more valuable to businesses, consumers are becoming more protective about businesses obtaining that data.[19]

**B.     Apple secretly collects consumers' personal information and tracks their mobile device and app activity.**

34.     Apple surreptitiously tracks a wide range of consumer activity.

35.     Consumer "actions" that Defendant tracks include: (a) how a user initially found an app; (b) the duration a user looked at an app in the app store; (b) the user's searches in the app store; (c) the advertisements displayed to each user; and (d) which apps the users clicked on.

36.     Not only does the App Store send to Apple this individualized information about users' activities, it also shares the types of devices used, and even data regarding screen resolution and keyboard settings.

---

[15]     *Consumer Privacy Study: Building Consumer Confidence Through Transparency and Control*, Cisco (Sept. 29, 2021), https://www.cisco.com/c/dam/en_us/about/doing_business/trust-center/docs/cisco-cybersecurity-series-2021-cps.pdf.

[16]     *Id.*

[17]     Brooke Auxier, et al., *Americans and Privacy: Concerned, Confused, and Feeling Lack of Control Over Their Personal Information*, Pew Research Center (Nov. 15, 2019), https://www.pewresearch.org/internet/2019/11/15/americans-and-privacy-concerned-confused-and-feeling-lack-of-control-over-their-personal-information.

[18]     Hossein Rahnama and Alex "Sandy" Pentland, *The New Rules of Data Privacy*, Harvard Business Review (Feb. 25, 2022), https://hbr.org/2022/02/the-new-rules-of-data-privacy.

[19]     *Id.*

37.     Apple is also able to track user activity across its various apps, as the data analytics it collects share user ID numbers.

38.     For instance, Apple "Stocks" shares a user's private information relating to a user's investment activities or preferences. It shares with Apple which stock the user is following or viewing. Apple even collects timestamps on when the user is viewing certain stocks and engaging with the Stocks app.

39.     In addition, Apple collects the news articles that users see within their mobile device.

40.     Despite branding its products as designed to respect and protect users' privacy, Apple ignores users' expressed preferences to keep their data private for their own profit. Apple misappropriates users' information to make its advertising algorithms more effective, which, in turn, generates Apple more revenue from advertisers.

41.     In short, Apple cannot justify collecting private user data when users expressly direct Apple not to do so by turning off "Allow Apps to Request to Track" and/or "Share [Device] Analytics."

42.     Apple has not disclosed to users that it was continuing to track their private data, in direct contravention of the users' requests—made using the very steps Apple instructs them to follow— that Apple not do so.

43.     Because of Apple's deception and knowing concealment, any applicable statute of limitations has been tolled until only recently, when Plaintiff discovered her data was being tracked.

## V.     CLASS ACTION ALLEGATIONS

44.     Plaintiff brings this action on behalf of herself and on behalf of the following proposed classes:

> Nationwide Class: All individuals who, while using an Apple mobile device, had their information tracked or used by Apple after turning off "Allow Apps to Request to Track," "Share iPad Analytics," "Share iPhone Analytics" and/or any other similar setting on an Apple mobile device that purported to stop Apple from collecting mobile app activity.

In addition, or in the alternative, Plaintiff brings this action on behalf of the following California state class:

> California Class: All individuals who, while using an Apple mobile device, had their information tracked or used by Apple after turning off "Allow Apps to Request to

Track," "Share iPad Analytics," "Share iPhone Analytics" and/or any other similar setting on an Apple mobile device that purported to stop Apple from collecting mobile app activity.

45.     Excluded from the proposed Class are Apple, its parents, subsidiaries, affiliates, officers, and directors, any entity in which Apple has a controlling interest.

46.     Plaintiff reserves the right to re-define any of the class definitions prior to class certification and after having the opportunity to conduct discovery.

47.     The claims of all class members derive directly from a single course of conduct by Apple. Apple has engaged and continues to engage in uniform and standardized conduct toward the putative class members.

48.     Certification of Plaintiff's claims is appropriate because the elements of each of Plaintiff's claims can be proven (or disproven) on a class-wide basis using the common evidence.

49.     Accordingly, Plaintiff brings this lawsuit as a class action on Plaintiff's own behalf and on behalf of all other business, entities, and individuals similarly situated pursuant under Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

50.     **Numerosity** (Fed. R. Civ. P. 23(a)(1)). The members of the proposed Class are each so numerous that their individual joinder would be impracticable. While the exact number is not known at this time, it is generally ascertainable by appropriate discovery, and it is believed each Class includes many hundreds of thousands of members, if not more. The precise number of class members, and their addresses, are unknown to Plaintiff at this time but can be ascertained from Defendant's records.

51.     **Commonality and Predominance** (Fed. R. Civ. P. 23(a)(2); 23(b)(3)). Common questions of law and fact exist as to all class members. These questions predominate over the questions affecting only individual class members. The common legal and factual questions include, without limitation:

    (a)    whether Defendant collected or tracked mobile user information and data without the class members' consent;

    (b)    whether Plaintiff and the Class are entitled to actual, compensatory, nominal, statutory, enhanced, and/or punitive damages, and if so in what amount; and

(c)     whether Plaintiff and the Class are entitled to injunctive, declaratory relief, or other equitable relief.

52.     **Typicality of Claims** (Fed. R. Civ. P. 23(a)(3)). The claims of the Plaintiff and the putative class members are based on the same legal theories and arise from the same unlawful and willful conduct of Defendant, resulting in the same injury to the Plaintiff and the class members. Plaintiff and all class members are similarly affected by Defendant's wrongful conduct, were damaged in the same way, and seek the same relief. Plaintiff's interests coincide with, and are not antagonistic to, those of the other class members. Plaintiff has been damaged by the same wrongdoing set forth in this Complaint.

53.     **Adequacy of Representation** (Fed. R. Civ. P. 23(a)(4)). Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the class members, and she has retained counsel competent and experienced in complex class action, business competition, and consumer privacy litigation. Plaintiff and her counsel will fairly and adequately protect the interest of the class members.

54.     **Superiority of a Class Action** (Fed. R. Civ. P. 23(b)(3)). A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and class members. There is no special interest in class members individually controlling the prosecution of separate actions. The damages suffered by individual class members, while significant, are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Further, it would be virtually impossible for the class members individually to redress effectively the wrongs done to them. And, even if class members themselves could afford such individual litigation; the court system could not, given the thousands or even millions of cases that would need to be filed. Individualized litigation would also present a potential for inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system, given the complex legal and factual issues involved. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

55.     **Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief** (Fed. R. Civ. P. 23(b)(1) and (2)). In the alternative, this action may properly be maintained as a class action, because:

(a)     the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudication with respect to individual class members, which would establish incompatible standards of conduct for Defendant; or

(b)     the prosecution of separate actions by individual class members would create a risk of adjudications with respect to individual class members which would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

(c)     Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

<u>**CAUSES OF ACTION**</u>

56.     Plaintiff brings each of the following claims for relief pursuant to California law because California has a substantial relationship to defendant Apple because Apple has its principal place of business in California, upon information and belief Apple designed and developed the software to track analytical data on iPhones from its California headquarters and the challenged conduct thus emanated from California. Accordingly, a significant portion of the events and decision-making relating to the decision to continue to track analytics even after consumers switched it off likely occurred at Apple's business headquarters in California. Should the Court not apply California law to Plaintiff's claims, Plaintiff alleges, in the alternative, that the common law claims should be governed by the Plaintiff's respective states of residence.

<u>**COUNT I**</u>
**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.***
**(On Behalf of Plaintiff and the Nationwide Class or, in the Alternative, the California Class)**

57.     Plaintiff repeats each and every allegation of this Complaint as if fully set forth at length herein.

1    58.    Defendant Apple is a "person" as that term is defined by, *inter alia*, Cal. Bus. & Prof.

2    Code § 17201.

3    59.    Defendant violated the California Unfair Competition Law ("UCL"), §§ 17200, *et seq*.,

4    by engaging in unlawful, unfair, and deceptive business acts and practices in relation to its practice of

5    unlawfully collecting and using data from its iPhone and iPad users, even if they indicate they do not

6    want to be tracked on their mobile devices.

7    60.    Defendant's unlawful, unfair, and deceptive acts and practices include:

8    a.    Illegally recording consumers' confidential activity on its consumer

9    mobile applications.

10   b.    Unlawfully collecting, storing, sharing, or otherwise using data from its

11   iPad and iPhone users while representing to users that the data collection software was

12   inactivated on their devices;

13   c.    Not honoring the requests of its users to refrain from tracking users' data

14   while using Apple devices;

15   d.    Continuing to lead users to believe that Apple is not receiving the data

16   or tracking app usage, while Apple continues to do so without the users' knowledge or

17   consent.

18   e.    Defendant's illegal collection of user data also lead to substantial

19   injuries, as described above, that are not outweighed by any countervailing benefits to

20   consumers or competition as contemplated under the UCL. Because Plaintiff and the

21   class members did not and could not know of Apple's continued tracking of their data

22   analytics and impermissible use of their personal data, they could not have reasonably

23   avoided the harms caused by Defendant's practices.

24   f.    Defendant misrepresented that it would protect the privacy and data

25   analytics of Plaintiff and class members who elected not to share that information with

26   Apple yet failed to do so. Defendant further omitted, suppressed, and/or concealed the

27   material fact that it would continue to track users' communications and data usage even

28

after those users requested that Apple not track or record Plaintiff's communications or access their computing devices and apps.

g.      Defendant engaged in unlawful business practices by violating Cal. Penal Code § 632.

61.     Defendant's misrepresentations and omissions to Plaintiff and the class members were material because they were likely to deceive reasonable individuals about Defendant's adherence to its own privacy policies and procedures for turning off the "Allow Apps to Request to Track" and/or "Share Analytics" features.

62.     Defendant intended to mislead Plaintiff and members of the class and induce them to rely on its misrepresentations and omissions.

63.     If Defendant had disclosed to Plaintiff and members of the class that it would continue to receive their data regardless of the election to turn this tracking feature off, Defendant would have been unable to continue in business with such blatant disregard for users' privacy and data security. However, Defendant instead received, maintained, and compiled Plaintiff's and the class members' personal data without advising class members that Apple would continue to invade their privacy and track data usage without their knowledge.  Accordingly, Plaintiff and class members acted reasonably in relying on Defendant's misrepresentations about de-activating the data tracking features on their Apple devices and omissions that Apple would continue to receive this data despite users' requests to the contrary.

64.     Defendant acted intentionally, knowingly, and maliciously to violate the UCL in reckless disregard of Plaintiff's and class members' rights.

65.     As a direct and proximate result of Defendant's violations of the UCL, Plaintiff and the class sustained actual losses and damages as described herein.

66.     Plaintiff and the class seek damages, injunctive relief, and other and further relief as the Court may deem just and proper. To the extent any of these remedies are equitable, Plaintiff seeks them in the alternative to any adequate remedy at law they may have.

67.     Plaintiff brings this cause of action on behalf of all Class Members pursuant to UCL § 17203, which authorized extraterritorial application of the UCL.  In the alternative, Plaintiff brings this cause of action on behalf of the California Class.

**COUNT II**
**UNJUST ENRICHMENT (QUASI-CONTRACT CLAIM FOR RESTITUTION AND DISGORGEMENT) OR, ALTERNATIVELY, BREACH OF CONTRACT**
**(On Behalf of Plaintiff and the Nationwide Class or, in the Alternative, the California Class)**

68.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

69.     Plaintiff brings this claim individually and on behalf of members of the Class against Defendant.

70.     Plaintiff and Class members unwittingly conferred a benefit upon Apple. Apple took and retained valuable personal information belonging to Plaintiff and Class members when it intentionally and comprehensively obtained their personal without their consent, despite representing that Apple would stop collecting Plaintiff and Class members mobile app information or activity if the "Allow Apps to Request to Track" and/or "Share [Device] Analytics" settings are turned off.

71.     Apple was enriched when it utilized Plaintiff's and Class members' personal information stored without consent for its own financial advantage to optimize its advertising platform, including by allowing its paying advertisers to target Plaintiff and Class members for lucrative advertisements.

72.     Apple was enriched when it utilized Plaintiff's and Class members' personal information stored without consent for its own financial advantage to build better services, to maintain and improve Apple's services, to develop new services, and to measure performance, all of which enable Apple to, and which Apple does use, to create operational efficiencies and be competitive in a wide array of industries.

73.     In exchange for Plaintiff's and Class members' loss of privacy and the financial benefits Apple enjoyed as a result thereof, including, but not limited to, advertising profits, while Plaintiff and Class members received nothing.

74.     Defendant has knowledge of such benefits.

- 16 -

75. It would be inequitable for Apple to retain the benefits it has unjustly received. Therefore, as a result of Apple's actions, Plaintiff and Class members seek an order that Apple disgorge the profits and other benefits it has unjustly obtained.

76. Alternatively, to the extent Apple successfully asserts that the Terms of Service form a binding contract that sufficiently defines the parties' rights regarding Apple's use of Plaintiff's and Class members' location information, thereby rendering a claim for unjust enrichment unavailable (which Plaintiff denies in the first instance), then Plaintiff alleges that Apple's conduct constitutes a breach of any such binding contract. For example, Apple's Terms of Service incorporate Apple's Privacy Policies, and in those Privacy Policies, Apple promises that "Apple requires app developers to ask for permission before they track your activity." Apple breaches this contract by furtively allowing Apple apps to track user activity despite not asking for permission to do so.

77. To the extent Plaintiff seeks equitable relief, Plaintiff and the members of the Class have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to Plaintiff and class members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money a defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims for restitution entail few elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

1

2

3

<u>COUNT III</u>
**VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT ("CIPA")**
**CALIFORNIA PENAL CODE § 632**
**(On Behalf of Plaintiff and the Nationwide Class or, in the Alternative,**
**the California Class)**

4

5

78.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth

above as though fully set forth herein.

6

7

79.     Plaintiff brings this claim individually and on behalf of members of the Class against

Defendant.

8

9

80.     The California Invasion of Privacy Act is codified at Cal. Penal Code §§ 630 to 638.

The Act begins with its statement of purpose:

10

11

12

13

> The Legislature hereby declares that advances in science and technology have led to
> the development of new devices and techniques for the purpose of eavesdropping upon
> private communications and that the invasion of privacy resulting from the continual
> and increasing use of such devices and techniques has created a serious threat to the
> free exercise of personal liberties and cannot be tolerated in a free and civilized society.

14

Cal. Penal Code § 630.

15

81.     Cal. Penal Code § 632(a) provides, in pertinent part:

16

17

18

19

> A person who, intentionally and without the consent of all parties to a confidential
> communication, uses an electronic amplifying or recording device to eavesdrop upon
> or record the confidential communication, whether the communication is carried on
> among the parties in the presence of one another or by means of a telegraph, telephone,
> or other device, except a radio, shall be punished by a fine not exceeding two thousand
> five hundred dollars . . . .

20

82.     A defendant must show it had the consent of all parties to a communication.

21

22

23

24

83.     Apple maintains its principal place of business in California; designed, contrived and
effectuated its scheme to track and record consumer communications while they were browsing apps
from their device while "Allow Apps to Request to Track" and/or "Share [Device] Analytics" were
turned off; and has adopted California substantive law to govern its relationship with its users.

25

26

27

84.     At all relevant times, Apple's tracking and recording of Plaintiff's communications
while using an app with "Allow Apps to Request to Track" and/or "Share [Device] Analytics" turned
off was without authorization and consent from the Plaintiff.

28

- 18 -

85. Apple's mobile applications constitute an "amplifying or recording device" under the CIPA.

86. Plaintiff has suffered loss by reason of these violations, including, but not limited to, violation of her rights to privacy and loss of value in their personally identifiable information.

87. Pursuant to California Penal Code § 637.2, Plaintiff has been injured by the violations of California Penal Code § 632 and seeks damages for the greater of $5,000 or three times the amount of actual damages, as well as injunctive relief.

**COUNT IV**
**INVASION OF PRIVACY**
**(On Behalf of Plaintiff and the Nationwide Class or, in the Alternative,**
**the California Class)**

88. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

89. Plaintiff brings this claim individually and on behalf of members of the Class against Defendant.

90. The right to privacy in California's constitution creates a right of action against private entities such as Apple.

91. The principal purpose of this constitutional right was to protect against unnecessary information gathering, use, and dissemination by public and private entities, including Apple.

92. To plead a California constitutional privacy claim, a plaintiff must show an invasion of (1) a legally protected privacy interest; (2) where the plaintiff had a reasonable expectation of privacy in the circumstances; and (3) conduct by the defendant constituting a serious invasion of privacy.

93. As described herein, Apple has intruded upon the following legally protected privacy interests:

a. The California Wiretap Act as alleged herein;

b. A Fourth Amendment right to privacy contained on personal computing devices, including web-browsing history, as explained by the United States Supreme Court in the unanimous decision of *Riley v. California*;

- 19 -

c.      The California Constitution, which guarantees Californians the right to privacy; and

d.      Apple's Privacy Policy and policies referenced therein, and other public promises it made not to track or record Plaintiff's communications or access their computing devices and apps while "Allow Apps to Request to Track" and/or "Share [Device & Watch Analytics" are turned off.

94.     Plaintiff had a reasonable expectation of privacy under the circumstances in that Plaintiff could not have reasonably expected that Apple would commit acts in violation of state civil and criminal laws; and Apple affirmatively promised consumers it would not track their communications or access their computing devices or apps while they were using an app while in "Allow Apps to Request to Track" and/or "Share [Device] Analytics" were turned off.

95.     Apple's actions constituted a serious invasion of privacy in that it:

a.      Invaded a zone of privacy protected by the Fourth Amendment, namely the right to privacy in data contained on personal computing devices, including user data, app activity and app browsing histories;

b.      Violated dozens of state criminal laws on wiretapping and invasion of privacy, including the California Invasion of Privacy Act;

c.      Invaded the privacy rights of millions of Americans without their consent; and

d.      Constituted the unauthorized taking of valuable information from millions of Americans through deceit.

96.     Committing criminal acts against millions of Americans constitutes an egregious breach of social norms that is highly offensive.

97.     The surreptitious and unauthorized tracking of the internet communications of millions of Americans, particularly where, as here, they have taken active (and recommended) measures to ensure their privacy, constitutes an egregious breach of social norms that is highly offensive.

98.     Apple's intentional intrusion into Plaintiff's internet communications and their computing devices and apps was highly offensive to a reasonable person in that Apple violated state criminal and civil laws designed to protect individual privacy and against theft.

99. The taking of personally identifiable information from millions of Americans through deceit is highly offensive behavior.

100. Secret monitoring of private app browsing is highly offensive behavior.

101. Wiretapping and surreptitious recording of communications is highly offensive behavior.

102. Apple lacked a legitimate business interest in tracking consumers while use an app while "Allow Apps to Request to Track" and/or "Share [Device] Analytics" were turned off, without their consent.

103. Plaintiff and the Class members have been damaged by Apple's invasion of their privacy and are entitled to just compensation and injunctive relief.

104. Plaintiff and the members of the Class have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to Plaintiff and class members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money a defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims for restitution entail few elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representative for the Class and Plaintiff's attorneys as Class Counsel;

b. For an order declaring that Defendant's conduct violates the laws referenced herein;

c. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

d. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

f. For an order of restitution and all other forms of equitable monetary relief;

g. For injunctive relief as the Court may deem proper; and

h. For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.


Dated: January 26, 2023                    Respectfully submitted,


                                           */s/ Tina Wolfson*
                                           Tina Wolfson (SBN 174806)
                                           twolfson@ahdootwolfson.com
                                           **AHDOOT & WOLFSON, PC**
                                           2600 W. Olive Avenue, Suite 500
                                           Burbank, CA 91505
                                           Telephone: (310) 474-9111
                                           Facsimile:  (310) 474-8585

                                           Andrew Ferich (*pro hac vice* forthcoming)
                                           aferich@ahdootwolfson.com
                                           **AHDOOT & WOLFSON, PC**
                                           201 King of Prussia Road, Suite 650
                                           Radnor, PA 19087
                                           Telephone: (310) 474-9111
                                           Facsimile:  (310) 474-8585

CLASS ACTION COMPLAINT

1           Jonathan Shub (*pro hac vice* forthcoming)
jshub@shublawyers.com
2           Benjamin F. Johns (*pro hac vice* forthcoming)
bjohns@shublawyers.com
3           Samantha E. Holbrook (*pro hac vice* forthcoming)
sholbrook@shublawyers.com
4           **SHUB LAW FIRM LLC**
5           134 Kings Highway E.
Haddonfield, NJ 08033
6           Telephone: (856) 772-7200

7           Raphael Janove (*pro hac vice* forthcoming)
Rafi@PollockCohen.com
8           Adam Pollock (*pro hac vice* forthcoming)
9           Adam@PollockCohen.com
**POLLOCK COHEN LLP**
10          111 Broadway, Suite 1804
11          New York, NY 10006
Telephone: (212) 337-5361
12

13          *Class Counsel for Plaintiff and the Proposed Class*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 23 -

CLASS ACTION COMPLAINT